UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

IN RE:

MEDICAL STAFFING NETWORK HOLDINGS, INC., *et al.*,[1]

Debtors.
_______________________________________/

Chapter 11 Cases

Case No. 10-29101-BKC-EPK

Jointly Administered

**NOTICE OF FILING BLACKLINE OF PROPOSED ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT; (III) APPROVING PROCEDURES AND RIGHTS RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Medical Staffing Network Holdings, Inc., Medical Staffing Holdings, LLC, Medical Staffing Network, Inc., InteliStaf Holdings, Inc., MSN-Illinois Holdings, Inc., InteliStaf Group, Inc., Medical Staffing Network of Illinois, LLC, Medical Staffing Network Assets, LLC, InteliStaf Healthcare, Inc., InteliStaf Partners No. 1, LLC, InteliStaf Partners No. 2, LLC and InteliStaf Healthcare Management, L.P. (collectively, the "Debtors"), by and through undersigned counsel, hereby file the attached blackline of the *Proposed Order (i) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; (ii) Authorizing and Approving the Asset Purchase Agreement; (iii)*

[1] The address of each of the Debtors is 901 Yamato Road, Suite 110, Boca Raton, FL 33431; and the last four digits of the taxpayer identification number of each of the Debtors follows in parenthesis: (i) Medical Staffing Network Holdings, Inc. (5171); (ii) Medical Staffing Holdings, LLC (2662); (iii) Medical Staffing Network, Inc. (9868); (iv) MSN-Illinois Holdings, Inc. (4402); (v) InteliStaf Holdings, Inc. (4008); (vi) InteliStaf Group, Inc. (7220); (vii) Medical Staffing Network of Illinois, LLC (4409); (viii) Medical Staffing Network Assets, LLC (4413); (ix) InteliStaf Healthcare, Inc. (7108); (x) InteliStaf Partners No. 1, LLC (2832); (xi) InteliStaf Partners No. 2, LLC (5965); and (xii) InteliStaf Healthcare Management, L.P. (7958).

*Approving Procedures and Rights Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (iv) Granting Related Relief*, marked to show revisions to the form of order attached to the Debtors' Sale Motion [D.E. 16].

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Dated: August 19, 2010

BERGER SINGERMAN, P.A.
*Counsel for Debtors-in-Possession*
200 S. Biscayne Boulevard, Suite 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
and
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Telephone: (954) 525-9900
Facsimile: (954) 523-2782

By: */s/ Paul Steven Singerman*
Paul Steven Singerman
Florida Bar No. 378860
singerman@bergersingerman.com
Leslie Gern Cloyd
Florida Bar No. 303305
lcloyd@bergersingerman.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MEDICAL STAFFING NETWORK HOLDINGS, INC., *et al.*,[1] | ) | Case No. 10-29101-EPK |
| Debtors. | ) | Jointly Administered |

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT; (III) APPROVING PROCEDURES AND RIGHTS RELATED TO ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

[1] The address of each of the Debtors is 901 Yamato Road, Suite 110, Boca Raton, FL 33431; and the last four digits of the taxpayer identification number of each of the Debtors follows in parenthesis: (i) Medical Staffing Network Holdings, Inc. (5171); (ii) Medical Staffing Holdings, LLC (2662); (iii) Medical Staffing Network, Inc. (9868); (iv) MSN-Illinois Holdings, Inc. (4402); (v) InteliStaf Holdings, Inc. (4008); (vi) InteliStaf Group, Inc. (7220); (vii) Medical Staffing Network of Illinois, LLC (4409); (viii) Medical Staffing Network Assets, LLC (4413); (ix) InteliStaf Healthcare, Inc. (7108); (x) InteliStaf Partners No. 1, LLC (2832); (xi) InteliStaf Partners No. 2, LLC (5965); and (xii) InteliStaf Healthcare Management, L.P. (7958).

**THIS CAUSE** came before the Court on August ~~—,~~**20,** 2010 **at 10:30 a.m. prevailing local time** upon the motion, dated July 2, 2010 (the "Sale Motion") [D.E. ~~—~~**16**] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for the entry of an order (the "Order") pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances and other interests, with such sale to be consummated in accordance with the terms and conditions of the Asset Purchase Agreement[2]; (b) authorizing and approving the execution and delivery of the Asset Purchase Agreement; (c) approving procedures and rights related to the assumption and assignment of certain executory contracts and unexpired leases; and (d) granting related relief, as more particularly described in the Sale Motion; and a hearing having been held to consider the relief requested in the Sale Motion (the "Sale Hearing"); and this Court having entered an order dated ~~[ ],~~**July 23,** 2010 (the "**Original** Bidding Procedures Order") **[D.E. 194]** authorizing the Debtors to solicit and consider offers for the Purchased Assets and Transferred Equity Interests and conduct the Auction in accordance with the terms and conditions of the Bidding Procedures (as such term is defined in the Bidding Procedures Order **(as defined below)**) and approving, *inter alia*, (i) the Bidding Procedures; (ii) the form and manner of notice of the Auction, and the Sale Hearing; and (iii) procedures relating to the assumption and assignment of

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in, as applicable, the Sale Motion or that certain Asset Purchase Agreement, dated as of July 2, 2010, by and among **Medical Staffing Network Healthcare, LLC (f/k/a** MSN AcquisitionCo, LLC **)**, as Purchaser, and Medical Staffing Network, Inc., Medical Staffing Holdings, LLC, Medical Staffing Network Holdings, Inc. and all subsidiaries of Medical Staffing Network, Inc., as Sellers**, a copy of which is attached as Exhibit A to the Sale Motion, as amended by that certain First Amendment to Asset Purchase Agreement, dated August 16, 2010 [D.E. 287]** (as may be amended, supplemented or otherwise modified from time to time, **collectively,** the "Asset Purchase Agreement")~~, a copy of which is attached hereto as Exhibit A.~~**.**

certain unexpired leases and executory contracts, including notice of proposed Cure Costs**; and this Court having entered an order dated August [__], 2010 (the "Amended Bidding Procedures Order" and, together with the Original Bidding Procedures Order, the "Bidding Procedures Order") granting the Debtors' emergency motion for entry of an order amending the Original Bidding Procedures Order**; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(1) and 1334(a); and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b)(2); and upon consideration of the *Declaration of Moshin Y. Meghji In Support of Petitions and First Day Pleadings* (the "First Day Declaration") **[D.E. 7]** and the *Declaration of Leon Szlezinger In Support of Emergency Motion to Approve Secured Debtor In Possession Financing and Related Relief* (**as supplemented by the *Supplement To Declaration of Leon Szlezinger In Support of Debtors' Emergency Motion (I) For Authorization To (A) Obtain Postpetition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364 and (B) Utilize Cash Collateral Pursuant To 11 U.S.C. § 363; (II) For Order Granting Adequate Protection To Prepetition Secured Parties Pursuant To 11 U.S.C. §§ 361, 362, 363, and 364, and (III) To Schedule A Final Hearing Pursuant to Bankruptcy Rule 4001* (collectively,** the "DIP Motion Declaration") **[D.E. 14 and 42, respectively]; and consideration of the testimonial evidence adduced by the Debtors in support of the relief sought by the Sale Motion from Kevin Little, the Debtors' President and Chief Financial Officer and Maria Arnaoudona, financial advisor for the agent of the First Lien Lenders on behalf of the Purchaser**; and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings

and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. The Court has jurisdiction over this matter and over the Debtors' estates and their property pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

E. The Asset Purchase Agreement is substantially in the form approved by the Bidding Procedures Order. **Medical Staffing Network Healthcare, LLC (f/k/a** MSN

3 All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

AcquisitionCo, LLC~~ is an entity owned by the persons that are~~**) (the "Purchaser") is an entity formed for the purpose of acquiring substantially all of the Debtors' assets. Upon the Closing of the sale under the Asset Purchase Agreement,** the lenders (the "First Lien Lenders", and including the First Lien Agent, the "First Lien Parties") party to that certain Amended and Restated Credit Agreement, dated as of March 12, 2009 (the "First Lien Credit Agreement") ~~and was formed for the purpose of acquiring~~**shall hold** substantially all of the ~~Debtors' assets~~**units and warrants to purchase units in MSN HoldCo, LLC, which in turn will own all of the Units in the Purchaser**.

F. The Purchased Assets and Transferred Equity Interests constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G. The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code and (ii) Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

H. On July 2, 2010 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (West Palm Beach Division) (the "Bankruptcy Court" or this "Court"). Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

I. This Court entered the Bidding Procedures Order on ~~[__________],~~**July 23,** 2010, (i) approving competitive bidding and sale procedures~~ (the "Bidding Procedures")~~; (ii) approving the form and manner of notices; (iii) approving entry into the Asset Purchase Agreement; (iv)

scheduling dates to conduct an auction and a hearing to consider final approval of the sale, including treatment of executory contracts and unexpired leases; (v) authorizing the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances and interests; and (vi) granting certain related relief.

J. Actual written notice of, and a reasonable opportunity to object or be heard with respect to, the Sale Hearing, the Auction, the Sale Motion and the transactions contemplated by the Asset Purchase Agreement has been afforded to all known interested entities, including, but not limited to the following parties: (i) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Purchased Assets and Transferred Equity Interests; (ii) the Office of the United States Trustee; (iii) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Purchased Assets and Transferred Equity Interests, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Purchased Assets and Transferred Equity Interests or have any known interest in the relief requested by the Sale Motion; (iv) the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (v) counsel to the Purchaser; (vi) counsel to the agents for prepetition and postpetition secured lenders; (vii) the United States Attorney's office; (viii) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (ix) all parties to any litigation involving the Debtors; (x) all of the Debtors' current employees and former employees~~, if any, who were terminated immediately prior to the commencement of these cases,~~; (xi) all counterparties to any executory contract or unexpired lease of the Debtors; (xii) all other known

creditors and interest holders of Debtors; (xiii) all potential bidders previously identified or otherwise known to the Debtors; and (xiv) the Securities and Exchange Commission.

K. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion.

L. As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing and the transactions contemplated by the Asset Purchase Agreement has been provided in accordance with sections 102(1), 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008 and 9014. The Debtors have also complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Hearing and the transactions contemplated by the Asset Purchase Agreement as required by the Asset Purchase Agreement ~~and~~**, the** Bidding Procedures Order**and other applicable orders of this Court**, including with respect to notice of the assumption, sale and assignment of the Assigned Contracts. Notice of the Sale Hearing, the Auction, the Sale Motion and the sale of the Purchased Assets and Transferred Equity Interests was also published in *The Wall Street Journal*, national edition, on ~~[__________],~~**July 30,** 2010. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

M. The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the sale of the Purchased Assets and Transferred Equity Interests and the transactions contemplated by the Asset Purchase Agreement outside of the ordinary course of business. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Purchased Assets and

Transferred Equity Interests if the sale is not consummated quickly; (ii) the Asset Purchase Agreement constitutes the highest or best offer for the Purchased Assets and Transferred Equity Interests; (iii) the Asset Purchase Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Asset Purchase Agreement, there is a substantial risk of liquidation.

N. The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arm's length negotiations between the Debtors and the Purchaser, and were substantively and procedurally fair to all parties.

O. The Debtors conducted the sale and the Auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. As demonstrated by (i) testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process which was conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify and submit their highest or otherwise best offer to purchase all or substantially all of the Debtors' assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets and Transferred Equity Interests, and (c) considered any bids submitted on or before the Bid Deadline (as defined in the Bidding Procedures Order).

P. The Purchaser is the Prevailing Bidder (as defined in the Sale Motion) for the Purchased Assets and Transferred Equity Interests in accordance with the Bidding Procedures Order. The Credit Bid of the Purchaser, upon the terms and conditions set forth in the Asset Purchase Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Asset Purchase Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets and Transferred Equity Interests; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

Q. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of section 363(m) and (n) of the Bankruptcy Code with respect to all of the Purchased Assets and Transferred Equity Interests. The Asset Purchase Agreement was negotiated and entered into in good faith and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Asset Purchase Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets and Transferred Equity Interests. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code. The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

R. The Debtors have full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the consummation of

such transactions has been duly and validly authorized by all necessary corporate or limited liability company authority by the Debtors. No consents or approvals, other than as may be expressly provided for in the Asset Purchase Agreement, are required by the Debtors.

S. Except as otherwise provided in the Asset Purchase Agreement, the Purchased Assets and Transferred Equity Interests shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is ~~used in the Bankruptcy Code~~**defined in 11 U.S.C. §101(5)**), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including



2893723-2
**NY\1676828.4**

claims otherwise arising under doctrines of successor liability (other than as expressly provided in the Asset Purchase Agreement; collectively, "Liens, Claims, Encumbrances and Interests") with such Liens, Claims, Encumbrances and Interests to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Purchaser would not enter into the Asset Purchase Agreement to purchase the Purchased Assets and Transferred Equity Interests otherwise.

T. The transfer of the Purchased Assets and Transferred Equity Interests to the Purchaser is a legal, valid and effective transfer of the Purchased Assets and Transferred Equity Interests, and, except as may otherwise be provided in the Asset Purchase Agreement, shall vest the Purchaser with all right, title and interest of the Debtors to the Purchased Assets and Transferred Equity Interests free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Asset Purchase Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Assets and Transferred Equity Interests being sold by the Debtors.

U. The transfer of the Purchased Assets and Transferred Equity Interests to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Assets and Transferred Equity Interests received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets and Transferred Equity Interests and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in

any of the Debtors or the Purchased Assets and Transferred Equity Interests shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets and Transferred Equity Interests.

V. The Debtors may sell the Purchased Assets and Transferred Equity Interests free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties to the Assigned Contracts, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and Transferred Equity Interests and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled.

W. If the sale of the Purchased Assets to the Purchaser was not free and clear of all Liens, Claims, Encumbrances and Interests, or if the Purchaser would, or in the future could, be liable for any of the Liens, Claims, Encumbrances and Interests, the Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the sale or the transaction contemplated by the Asset Purchase Agreement, thus adversely impacting the Debtors, their estates and their creditors.

X. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

Y. The Debtors and Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), (B) and 365(f), in connection with the sale and assumption and assignment of the Assigned Contracts and the Material Permits to the extent provided under the Asset Purchase Agreement. The Purchaser ~~is able to demonstrate~~**has demonstrated** adequate assurance of future performance with respect to any Assigned Contracts and Material Permits pursuant to section 365(b)(1)(C) of the Bankruptcy Code. Except as provided by in the Asset Purchase Agreement **and this Order**, the Assigned Contracts and the Material Permits are assignable notwithstanding any provisions contained therein to the contrary.

Z. To maximize the value of the Purchased Assets and Transferred Equity Interests, it is essential that the Closing occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the transaction contemplated by the Asset Purchase Agreement.

AA. In the absence of a stay pending appeal, the Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Asset Purchase Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

BB. The transactions contemplated under the Asset Purchase Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no common identity between the Debtors and the Purchaser, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the

Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors and their estates will release and forever discharge the Purchaser and any of ~~their~~**its** affiliates, **and** their **respective** successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Asset Purchase Agreement.

CC. The sale of the Purchased Assets and Transferred Equity Interests outside of a plan of reorganization pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a "*sub rosa*" chapter 11 plan.

DD. The Challenge Period (as defined in the DIP Order) has expired without the filing or assertion of a challenge and accordingly, the First Lien Lenders hold an allowed secured claim in the aggregate **principal** amount of not less than $~~[__ million],~~**98,784,590.21,** which claim is not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, plus such additional amounts, all to the extent allowed under, and pursuant to, the First Lien Credit Agreement (the "First Lien Allowed Secured Claim"). On account of the First Lien Allowed Secured Claim, the First Lien Lenders are secured creditors of the Debtors, holding valid, binding, enforceable and perfected security interests in, on and against the Debtors, their estates and property of the estates, arising in connection with, and pursuant to, that certain First Lien

Credit Agreement. ~~Pursuant~~**As contemplated under the Asset Purchase Agreement and pursuant** to the Bidding Procedures Order, the First Lien Lenders were authorized to credit bid any or all ~~such~~**of the** First Lien Allowed Secured Claim at the Auction under section 363(k) of the Bankruptcy Code.

EE. Pursuant to the Asset Purchase Agreement and Bankruptcy Code sections 363(b) and 363(k), the First Lien Lenders credit bid a portion of the Pre-Petition Loan Obligations in an amount equal to $~~[___ million],~~**84,122,982.40,** which credit bid was a valid and proper bid **as contemplated under the Asset Purchase Agreement and** pursuant to the Bidding Procedures Order.

FF. The Purchase Price for the Purchased Assets and Transferred Equity Interests including, but not limited to the Credit Bid, is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets and Transferred Equity Interests.

GG. Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the transactions contemplated by the Asset Purchase Agreement constitute a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their estates, their creditors and other parties in interest and should be approved.

HH. The consummation of the transactions contemplated by the Asset Purchase Agreement is legal, valid and properly authorized under all applicable provisions of the

Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The relief requested in the Sale Motion is granted and approved and the transactions contemplated thereby and by the Asset Purchase Agreement ~~is~~**are** approved, as set forth in this Order.

2. All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and **are overruled** as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3. Notice of the Sale Motion, Sale Hearing, the Auction and the transactions contemplated by the Asset Purchase Agreement was fair and ~~equitable~~**adequate and appropriate** under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and ~~6006.~~**6006 and L.R. 6004-1.**

**Approval of Sale**

4. Prior to the Auction the Purchaser obtained, and at the Auction the Purchaser exercised, the right to bid the Credit Bid in accordance and compliance with the terms of the Bidding Procedures Order, the Asset Purchase Agreement, and the First Lien Credit Agreement. All actions taken by the Purchaser arising from or relating to its exercise of the right to bid the Credit Bid were proper. The Purchaser's offer for the Purchased Assets and Transferred Equity Interests, as embodied in the Asset Purchase Agreement, was deemed a Qualified Bid (as defined

in the Bidding Procedures Order) and is the highest and best offer for the Purchased Assets and Transferred Equity Interests (thereby providing a greater recovery for the Debtors' estates than would be provided by any other available alternative), and the Asset Purchase Agreement, including all other ancillary documents, and all of the terms and conditions thereof, and the transactions contemplated thereby, including the Credit Bid, are hereby approved in all respects.

5. The sale of the Purchased Assets and Transferred Equity Interests and the consideration provided by the Purchaser under the Asset Purchase Agreement, including the amount provided pursuant to the Credit Bid, is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6. The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Asset Purchase Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Asset Purchase Agreement, as the case may be.

7. The Debtors are hereby authorized to fully assume, perform under, consummate and implement the terms of the Asset Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, this Order and sale of the Purchased

Assets and Transferred Equity Interests contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Purchased Assets and Transferred Equity Interests or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement, without any further corporate action or orders of this Court. Neither the Purchaser nor the Sellers shall have an obligation to proceed with the Closing under the Asset Purchase Agreement until all conditions precedent to their respective obligations to do so have been met, satisfied or waived.

8. The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required under applicable state corporation laws, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation

of the Asset Purchase Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

9. Effective as of the Closing (a) the sale of the Purchased Assets and Transferred Equity Interests by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets and Transferred Equity Interests notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets and Transferred Equity Interests, free and clear of all Liens, Claims, Encumbrances and Interests of any kind, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to any Assumed Liabilities.

**Transfer of Assets**

10. Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Purchased Assets and Transferred Equity Interests to the Purchaser. ~~Other than as expressly provided in Section 2.1 of the Asset Purchase Agreement, the~~**The** sale of the Purchased Assets and Transferred Equity Interests vests the Purchaser with all right, title and interest of the Debtors to the Purchased Assets and Transferred Equity Interests free and clear of any and all Liens, Claims, Encumbrances and Interests and other liabilities, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens, Claims, Encumbrances and Interests to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Purchased

Assets and Transferred Equity Interests. Following the Closing Date, no holder of any Liens, Claims, Encumbrances and Interests in the Purchased Assets and Transferred Equity Interests may interfere with the Purchaser's use and enjoyment of the Purchased Assets and Transferred Equity Interests based on or related to such Liens, Claims, Encumbrances and Interests, or any actions that the Debtors may take in their chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Asset Purchase Agreement or this Order.

11. The provisions of this Order authorizing the sale of the Purchased Assets and Transferred Equity Interests free and clear of Liens, Claims, Encumbrances and Interests and the Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. The previous sentence notwithstanding, the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, Encumbrances and Interests in the Purchased Assets and Transferred Equity Interests.

12. On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances or Interests of any kind against the Purchased Assets and Transferred Equity Interests, as such Liens, Claims, Encumbrances or Interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances or Interests in or against the Purchased Assets and Transferred Equity Interests shall not have delivered to the Debtors

prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances or Interests that the person or entity has with respect to the Purchased Assets and Transferred Equity Interests, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets and Transferred Equity Interests prior to **or after** the Closing, and the Purchaser is authorized to file such documents after the Closing.

13. To the greatest extent available under applicable law, and except as provided in the Asset Purchase Agreement, the Purchaser shall, as provided by the Asset Purchase Agreement, be authorized, as of the Closing Date, to operate under any Material Permit of the Debtors with respect to the Purchased Assets and Transferred Equity Interests, and all such Material Permits are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date as provided by the Asset Purchase Agreement.

14. All of the Debtors' interests in the Purchased Assets and Transferred Equity Interests to be acquired by the Purchaser under the Asset Purchase Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be construed and considered for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets and Transferred Equity Interests acquired by the Purchaser under the Asset Purchase Agreement and/or a bill of sale or assignment transferring indefeasible title and interest in the Purchased Assets and Transferred Equity Interests to the Purchaser.

15. Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, the Purchaser is not assuming nor shall it or any affiliate of

the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Purchased Assets and Transferred Equity Interests prior to the consummation of the transactions contemplated by the Asset Purchase Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Purchased Assets and Transferred Equity Interests, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Asset Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliate of the Purchaser.

16. Except as otherwise expressly provided in the Asset Purchase Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Purchased Assets and Transferred Equity Interests are directed to surrender possession of the Purchased Assets and Transferred Equity Interests to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

17. Upon the Closing, the prepetition First Lien Allowed Secured Claim shall be deemed satisfied in an amount equal to the Credit Bid in accordance with the allocation provided in the Asset Purchase Agreement. After deducting the applicable portion of the amount of the Credit Bid, the prepetition First Lien Allowed Secured Claim shall be deemed reduced in such amount with any remainder an allowed claim in each of the Debtors' cases without further order of the Court. Upon the Closing, the liens on the assets of the Debtors granted under the First Lien Loan Documents to secure the indebtedness thereunder shall be deemed released solely with respect to the Purchased Assets and Transferred Equity Interests, as applicable, and the Debtors shall take all reasonable actions to confirm removal of any such liens.

18. Effective upon the Closing Date and without further order of the Court, the Debtors and their estates shall waive any and all actions related to and release the First Lien Parties and the DIP Lenders and DIP Agent from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Loan Agreement or the DIP Order, any documents related to the DIP Loan Agreement or the DIP Order, any aspect of the prepetition or postpetition relationship with the First Lien Lenders and DIP Lenders and any Debtor, or any other acts or omissions by the First Lien Lenders or DIP Lenders in connection with the DIP Loan Agreement or the DIP Order, any documents related to the DIP Loan Agreement or the DIP Order and any aspect of their prepetition or postpetition relationship with any Debtor.

**Contracts to be Assigned**

19. From and after the date of entry of this Order, **and until 30 days following the Closing Date,** the Debtors shall not reject any executory contracts or unexpired leases to which any Debtors are a party unless otherwise agreed to in writing by Purchaser or as provided in the Asset Purchase Agreement.

20. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date **(or, with respect to any Assigned Contract subsequently designated as such pursuant to Sections 2.6(b) and 2.6(c) of the Asset Purchase Agreement, at the time of the assignment and assumption of such Assigned Contract)**, the Debtors' assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Asset Purchase Agreement of each Assigned Contract is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

21. The Debtors are hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing Date of the sale of the Purchased Assets and Transferred Equity Interests **(or, with respect to any Assigned Contract subsequently designated as such pursuant to Sections 2.6(b) and 2.6(c) of the Asset Purchase Agreement, at the time of the assignment and assumption of such Assigned Contract)**, the Assigned Contracts free and clear of all Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

22. Upon the Closing **(or, with respect to any Assigned Contract subsequently designated as such pursuant to Sections 2.6(b) and 2.6(c) of the Asset Purchase Agreement, at the time of the assignment and assumption of such Assigned Contract)**, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract. The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing, as further provided in the Asset Purchase Agreement.

23. The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.

**24. On or before the expiration of the Contract Retention Period, the Purchaser shall have the right, pursuant to the Asset Purchase Agreement, to designate any executory**

**contract or unexpired lease previously identified as a Non-Assumed Contract to be an Assigned Contract (by written notice to the Debtors) for all purposes under this Order, and the assignment and assumption of such additional Assigned Contracts is hereby approved in its entirety without further order of the court.**

**25.** **On or before the second (2nd) day prior to the Closing Date, the Purchaser shall have the right, pursuant to the Asset Purchase Agreement, to revise any schedule (other than the Seller Disclosure Schedule and the Purchaser Disclosure Schedule) setting forth the Purchased Assets and Excluded Assets to exclude from the definition of Purchased Assets and to include in the definition of Excluded Assets, any Assigned Contract, Medicaid provider number, Medicare provider number, Assumed Plan or other asset of the Debtors previously included in the definition of Purchased Assets, provided that no such change of a schedule, the definition of Purchased Assets or the definition of Excluded Assets shall reduce the amount of the Purchase Price below the amount of the Credit Bid.**

**26.** ~~24.~~ Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided by this Order, the Purchaser shall promptly pay the Cure Costs of or relating to any Assigned Contract as set forth in the Cure Notice (as defined in the Bidding Procedures Order) served by the Debtors on each of the parties to Assigned Contracts in the amount(s) listed ~~on Schedule 1.1(l) to the Asset Purchase Agreement~~**thereon**. The non-Debtor parties to the Assigned Contracts are forever bound by such Cure Costs and are hereby enjoined from taking any action against the Purchaser or the Purchased Assets and Transferred Equity Interests with respect to any claim for cure under any Assigned Contract. The payment of the applicable Cure Costs (if any) by the Purchaser shall (a) effect a cure of all defaults existing

thereunder as of the date that such executory contracts or unexpired leases are assumed and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. The Purchaser shall then have assumed the Assigned Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder. After the payment of the relevant Cure Costs by the Purchaser, neither the Debtors nor the Purchaser shall have any further liabilities to the counterparties to the Assigned Contracts other than the Purchaser's obligations under the Assigned Contracts that accrue and become due and payable on or after the date that such Assigned Contracts are assumed.

~~25. Any executory contract or unexpired lease for which the Purchaser has not determined whether to reject or assume as of the Closing shall be automatically deemed to be a Non-Assumed Contract for all purposes under the Asset Purchase Agreement. The Debtors may immediately reject such Non-Assumed Contract, and all Liabilities in connection with such Non-Assumed Contract shall be considered Excluded Liabilities under the Asset Purchase Agreement.~~

**27.** ~~26.~~ Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. For the avoidance of doubt, the assumption or assignment of any Assigned Contract shall not be a "change of control", however such term may be defined in the relevant Assigned Contract. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts have been satisfied.

**28.** ~~27.~~ Any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

**29.** ~~28.~~ Upon the conditions set forth in Sections 2.1 through 2.7 of the Asset Purchase Agreement, including Purchaser's payment of the relevant Cure Costs, if any, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

**30.** ~~29.~~ The Purchaser is able to provide adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

**31.** ~~30.~~ There shall be no assignment fees, increases, rent-acceleration or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

**32.** ~~31.~~ Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such contracts are assumed or arising by reason of the Closing.

**33.** ~~32.~~ Neither Purchaser nor any successor of Purchaser shall be responsible for or have any Liens, Claims, Encumbrances or Interests or obligations arising out of any of the contracts, agreements or understandings that are Non-Assumed Contracts.

34. Any executory contract under which the U.S. Department of Veterans Affairs (the "VA") is a counterparty shall not be deemed Purchased Assets and Assigned Contracts until the Purchaser shall have complied with the requisite approval requirements necessary to obtain the consent of the VA for the transfer of such contracts.

35. Upon satisfaction of all appropriate procedures required for the transfer of the Debtors' Medicare provider numbers, such transfers shall be approved in all respects without further order of the court.

36. Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement:

a) Subject to the satisfaction of all of the conditions set forth in clause (b) below and the execution of the ACE Assumption Agreement (as defined below) by the Debtors, the Purchaser and the ACE Companies (as defined below),

i. the Debtors are hereby authorized to assume, pursuant to 11 U.S.C. § 365, all insurance policies issued by ACE American Insurance Company and/or its affiliates (the "ACE Companies") to one or more of the Debtors and/or their predecessors and all related program, collateral and security, claims servicing and other agreements between one or more of the ACE Companies and the Debtors (collectively, the "ACE Policies and Agreements");

ii. the Debtors are hereby authorized to assign the ACE Policies and Agreements to the Purchaser and to enter into an assumption agreement by and among the Debtors, the Purchaser and the ACE Companies (in form and substance satisfactory to the ACE Companies, the Debtors and the Purchaser, the "ACE Assumption Agreement") with respect to such assignment; and

iii. effective upon the assignment of ACE Policies and Agreements, the Purchaser assumes any and all now existing or hereafter arising obligations and liabilities of the Debtors under the ACE Policies and Agreements and the Debtors' rights and interests in any and all collateral and security provided by the Debtors to the ACE Companies (including, without limitation, cash collateral, letters of credit and the proceeds thereof) shall be transferred and assigned to the Purchaser, and such collateral and security shall secure the

insureds' and/or the Purchaser's obligations and liabilities under the ACE Policies and Agreements.

b) The assumption and assignment of the ACE Policies and Agreements shall not be effective unless and until the (i) the ACE Companies, the Debtors and the Purchaser shall have executed the ACE Assumption Agreement and (ii) the ACE Companies, the Debtors and the Purchaser shall have satisfied the conditions to effectiveness set forth in the ACE Assumption Agreement or such conditions shall have been waived by the party having the right to waive thereunder. Notwithstanding the foregoing, the ACE Companies are under no obligation to enter into the ACE Assumption Agreement and have no obligation to voluntarily consent to any assumption or assumption and assignment of the ACE Policies and Agreements.

c) Upon satisfaction of the conditions set forth in paragraph (b) above, the ACE Policies and Agreements shall be deemed to be "Purchased Assets" and "Assigned Contracts".

37. The Stipulation dated August 19, 2010 between the Debtors and The Broadlane Group, Inc. ("Broadlane") is approved. Effective upon the Closing Date, the Debtors are authorized to assume and assign the Broadlane executory contracts upon the terms and conditions contained in the Stipulation.

**Additional Provisions**

38. The Debtors are hereby authorized to enter into a transition services agreement whereby the Purchaser will provide limited services to the Debtors in connection with certain contracts and other matters on terms and conditions satisfactory to the Purchaser and the Debtors, and without further order of this Court.

**39.** ~~33.~~ This Order and Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

**40.** ~~34.~~ Each and every federal, state and local government agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

**41.** ~~35.~~ To the extent prohibited by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets and Transferred Equity Interests sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the transaction contemplated by the Asset Purchase Agreement.

**42.** ~~36.~~ Except to the extent expressly included in the Assumed Liabilities, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors and their estates, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to

any of the Debtors or the Purchased Assets and Transferred Equity Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets and Transferred Equity Interests to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Purchased Assets and Transferred Equity Interests.

**43.** ~~37.~~ Other than the Assumed Liabilities or as otherwise provided for in the Asset Purchase Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Purchaser has not purchased any of the Excluded Assets. The Debtors and their estates are deemed to release and forever discharge the Purchaser and any of its affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale **and the Asset Purchase Agreement**, except for liabilities and obligations under the Asset Purchase Agreement.

**44.** ~~38.~~ The Purchaser is not and shall not be deemed a "successor" to the Debtors or their estates as a result of the consummation of the transactions contemplated by the Asset

Purchase Agreement or any other event occurring in the chapter 11 cases under any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Asset Purchase Agreement. Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Asset Purchase Agreement, neither the purchase of the Purchased Assets and Transferred Equity Interests by the Purchaser or its affiliates, nor the fact that the Purchaser or their affiliates are using any of the Purchased Assets and Transferred Equity Interests previously operated by the Debtors, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or

pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Purchased Assets and Transferred Equity Interests prior to the Closing, and (ix) any litigation.

**45.** ~~39.~~ Subject to the terms of the Asset Purchase Agreement, the Asset Purchase Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court, provided that any such waiver, modification, amendment or supplement is not materially less favorable to the Debtors. In the event a modification is materially less favorable to the Debtors, the Debtors shall file and serve a notice of such modification. If no party-in-interest files a written objection with the Court within five (5) business days, such modification shall be deemed approved without further order of the Court, but the Court may enter any such further order as may be necessary.

46. 40. The failure specifically to include any particular provisions of the Asset Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Asset Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing.

47. 41. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

48. 42. To the extent this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall govern and control.

49. 43. To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

50. 44. The provisions of this Order are non-severable and mutually dependent without written consent of Purchaser.

51. 45. Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

52. 46. Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion shall be deemed to provide sufficient notice of the Debtors' request for relief

from stay. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Asset Purchase Agreement at any time, subject to the terms of the Asset Purchase Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Asset Purchase Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Asset Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

**53.** ~~47.~~ This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Asset Purchase Agreement in all respects and to decide any disputes concerning this Order and the Asset Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Asset Purchase Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and Transferred Equity Interests and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Encumbrances and Interests.

###

Submitted by:
~~Jordi Guso, Esq.~~**Paul Steven Singerman, Esq.**
Berger Singerman, P.A.
200 South Biscayne Boulevard, Suite 1000
Miami, FL 33131
Tel.: (305) 755-9500
Fax: (305) 714-4340
Email: ~~jguso~~**psingerman**@bergersingerman.com

Copy furnished to:
~~Jordi Guso, Esq.~~**Paul Steven Singerman, Esq.**

*(Attorney ~~Guso~~**Singerman** is directed, pursuant to Local Rule 5005-1, to serve conformed copies of this ~~Bidding Procedures~~**Sale** Order upon all parties in interest, and to file a Certificate of Service with the Court confirming such service.)*